CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
May 26, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| Tamara Christine Thompson, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:25-cv-00003 |
| | ) | |
| Cenlar, FSB *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Tamara Christine Thompson filed this action alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and various state-law claims. Recently, the court dismissed Thompson's amended complaint without prejudice. This matter is before the court on Thompson's motion for reconsideration of that order under Federal Rule of Civil Procedure 59(e). (Dkt. 71.) For the reasons explained below, Thompson's motion will be denied.

### I.    Background[1]

The court assumes familiarity with the facts of the case, which is discussed in detail in the court's previous memorandum opinion. (Mem. Op. at 2–9 (Dkt. 69).) In sum, Thompson's amended complaint claimed that defendants orchestrated a fraudulent scheme to steal her house and personal property. (Am. Compl. ¶¶ 17–127 (Dkt. 11).) Among other allegations, Thompson claimed that defendants executed a fraudulent quitclaim deed that

---

[1] The facts in this section are taken from Ms. Thompson's amended complaint and accepted as true when resolving the motion for reconsideration. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

transferred the property to themselves, causing her eviction, (*id.* ¶¶ 41, 43, 55); entered Thompson's mortgage into a forbearance plan without her knowledge, leaving her with a $44,000 payment, (*id.* ¶¶ 56–57); locked Thompson out of her mortgage servicing account, (*id.* ¶¶ 93–97); sold the property to a third party, (*id.* ¶¶ 4, 116–17); and stole many of her personal belongings from the house, (*id.* ¶¶ 123–24).

Count 1 alleged that Defendants Clayton Thompson, Brian Thompson, Quincy Thompson, Annette Jackson, David J. Ottey, and Second Chance Homes (collectively, the "RICO Defendants") violated 18 U.S.C. § 1962(c) by participating as an enterprise in a pattern of racketeering activity. (Am. Compl. ¶¶ 128–51.) Count 2 alleges that they conspired to do the same in violation of 18 U.S.C. § 1962(d). (*Id.* ¶¶ 152–56.) Counts 3–10 alleged state-law claims for common-law conspiracy, conversion, trespass to chattels, gross negligence, breach of fiduciary duty, and violations of the Virginia Computer Crimes Act. (Am. Compl. ¶¶ 157– 226.)

Several RICO Defendants moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkts. 17, 19, 21, 36, 49.) The court granted these motions on October 17, 2025, (Dkt. 70), finding that Thompson failed to allege a "pattern of racketeering activity." (Mem. Op. at 19–24.) Specifically, the court found that the alleged criminal activity was "limited in scope, relatively short in duration, and affected only a single victim," and failed to allege "the sort of extended, widespread, or particularly dangerous pattern of racketeering which Congress intended to combat with federal penalties." (*Id.* at 23 (citing *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988)).) The court declined to

exercise supplemental jurisdiction over the remaining state-law claims.  (*Id.* at 24–26.)  The court also denied Thompson's motions for default judgment against several non-answering defendants.  (*Id.* at 26.)

Thompson's amended complaint was dismissed without prejudice.  (Dkt. 70 at 1.)  The court permitted Thompson to move for leave to file a second amended complaint within twenty-one days of the court's order.  (*Id.* at 2.)  The court provided that Counts 1 and 2 would be dismissed with prejudice if Thompson did not file a motion for leave to amend by that date.  (*Id.*)  Thompson did not file a motion for leave to amend in that time.  Instead, twenty-eight days later, she filed the present motion for reconsideration under Rule 59(e).  (Dkt. 71.)

## II.    Standard of Review

The court assumes familiarity with the relevant legal standards for Thompson's RICO claims, as discussed in the court's previous memorandum opinion.

"A Rule 59(e) motion may only be granted in three situations: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available [previously]; or (3) to correct a clear error of law or prevent manifest injustice.'"  *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (quoting *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007)).  "It is an extraordinary remedy that should be applied sparingly" and only in "exceptional circumstances."  *Id.*  The rule "may not be used to relitigate old matters, or to raise arguments . . . that could have been raised prior to the entry of judgment."  *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (cleaned up).

### III.    Analysis

Thompson does not allege that there has been an intervening change in controlling law.  Instead, Thompson argues that reconsideration is warranted 1) "to account for new evidence not available [previously]," 2) to correct clear errors of law, and 3) to prevent manifest injustice.  *Mayfield*, 674 F.3d at 378.  None of these arguments support reconsideration.

### A.  No "newly discovered evidence" warrants reconsideration.

To start, Thompson states that "newly discovered evidence . . . necessitates amendment of this Court's judgment."  (Pl.'s Br. at 13 (Dkt. 72).)  Specifically, Thompson says that she recently learned that injuries she sustained in 2018 and 2023 caused a traumatic brain injury.  (Dkt. 72-1 ¶ 13.)  Thompson offers that the 2018 injury was caused by a physical attack by her now-deceased ex-husband, while her 2023 injury resulted from a car accident.  (*Id.* ¶¶ 4–5, 11.)  While the court sympathizes with these injuries, Thompson offers no explanation for why this information could not have been presented in her amended complaint.  *Banister v. Davis*, 590 U.S. 504, 508 (2020) (noting that under Rule 59(e), "courts will not address new arguments or evidence that the moving party could have raised before the decision issued").  And more importantly, Thompson does not explain how these facts cure her amended complaint's failure to allege a pattern of racketeering activity (which was the basis of the court's dismissal).  (Mem. Op. at 23–24.)  There is therefore no newly discovered evidence meriting reconsideration.

### B.  Thompson points to no factual errors creating "manifest injustice."

Next, Thompson argues that "manifest injustice" resulted from various "factual errors" in the court's opinion.  (Pl.'s Br. ¶¶ 17–34.)  To start, many of these so-called "factual errors"

are misunderstandings—or mischaracterizations—by Thompson.[2]   Others are superfluous misstatements that did not affect the merits of the case.[3]   Still other "factual errors" are merely legal conclusions with which Thompson disagrees.[4]   These do not constitute "manifest injustice" requiring reconsideration.  (Pl.'s Br. at 5–6.)

For the next "factual error," Thompson says the court erred in concluding that Thompson "was the sole victim of the criminal activity."  (Pl.'s Br. ¶¶ 27–28; Mem. Op. at 22.)  Thompson says that the court should have found other entities—Defendant Cenlar, FSB; the federal government; Jefferson County, West Virginia; an unnamed bank; and the state government of South Carolina—to be "victims" of the scheme.  (Pl.'s Br. ¶ 28.)   This argument is belied by her own pleadings.  (Am. Compl. ¶ 17 ("For at least five years, Plaintiff Tamara C. Thompson has been *the target* of a large RICO association-in-fact . . . ." (emphasis added)).)  It is also belied by one of those "victims" themselves.  (Dkt. 76 at 1 ("Cenlar rejects Plaintiff's characterization of Cenlar as a victim of the conspiracy she alleges.").)   Finally,

---

[2] For example, Thompson objects to the court calling her allegations against Defendants David Ottey and Second Chance Homes "especially sparse."  (Mem. Op. at 17).  Thompson argues this statement is "contradicted" by the amended complaint because Ottey and Second Chance Homes are mentioned across ten pages of the amended complaint.  (Pl.'s Br. ¶ 21.)  But what the court called "especially sparse" were Thompson's allegations that Ottey and Second Chance Homes shared a "common purpose" with the other RICO Defendants—*not* Thompson's allegations against these defendants in general.  (*See* Mem. Op. at 17 ("Ms. Thompson alleges that the RICO Defendants formed an enterprise with a common purpose . . . . [but] [t]he facts alleged in the amended complaint provide little support for that claim.  The allegations concerning Ottey and Second Chance Homes are especially sparse.").)

[3] The Memorandum Opinion states that Thompson moved to Ohio in 2018.  Instead, her then-husband Brian Thompson had allegedly moved there.  (Pl.'s Br. ¶¶ 19–20.)  Additionally, while the memorandum opinion stated that Thompson, her then-husband Brian Thompson, and her father-in-law Clayton Thompson executed a deed of trust to purchase the property at issue, (Mem. Op. at 2), Pamela Thompson was also a party to the deed, (Am. Compl. ¶ 19).

[4] Thompson takes issue with the court's conclusion that Thompson did not adequately allege that Quincy Thompson and Annette Jackson collaborated with Clayton Thompson.  (Pl.'s Br. ¶ 23 (citing Mem. Op. at 18).)  Thompson states that this is a factual error, because the amended complaint "specifically asserts that Quincy Thompson, Annette Jackson, Clayton Thompson, and David Ottey robbed Plaintiffs property in concert."  (*Id.* ¶ 24 (citing Am. Compl. ¶¶ 109–10).)  But again, as the court already ruled, these conclusory allegations are insufficient to allege collaboration between these individuals.  (Mem. Op. at 18.)  This does not constitute a "factual error" by the court.

Thompson points to only minor, incidental effects the scheme had on these "victims"; for example, Thompson says the federal government was a victim in part because several defendants stole mail from federal postal service facilities.[5] (Pl.'s Br. ¶ 28(d).)  The court finds these arguments unpersuasive—and insufficient to support reconsideration.   *See Metaxas v. Lee*, 503 F. Supp. 3d 923, 944 (N.D. Cal. 2020) (finding a lack of closed-ended continuity "because Defendants' scheme targeted only one victim" despite the presence of "merely incidental victims of the scheme" (citing *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1023–24 (7th Cir. 1992))).

Thompson also argues that the court should have found that certain robberies committed by Jackson, Ottey, and Quincy Thompson were predicate acts of a RICO pattern. (Pl.'s Br. ¶¶ 29–31.)   According to Thompson, the court overlooked that the amended complaint alleged these defendants "used threats of intimidation and other means not involving a physical weapon to rob Ms. Thompson's property."  (*Id.* ¶ 30.)  But the court did not overlook these allegations.  Instead, quoting the exact language that Thompson claims the court ignored, the court determined that the complaint's allegations were too conclusory to "suggest those Defendants used force or threatened Ms. Thompson . . . when removing items from the house."  (Mem. Op. at 22 n.5; *see also id.* ("[Thompson] has not sufficiently pled that either committed robbery . . . .").

For these reasons, the court finds Thompson has not shown any factual errors that resulted in a "manifest injustice" requiring reconsideration.

---

[5] As another example, Thompson says that the state of South Carolina is a "victim" because the RICO Defendants "pos[ed] a threat to public safety in South Carolina and prevent[ed] South Carolina from collecting on tickets."  (Pl.'s Br. ¶ 28(e).)

### C. The court made no "clear error of law."

Next, Thompson argues that the court made three clear legal errors. The court addresses each in turn.

First, Thompson says the court failed to apply *Parcoil Corp. v. NOWSCO Well Serv., Ltd.* in determining whether Thompson alleged a pattern of racketeering activity. (Pl.'s Br. ¶¶ 35–39 (citing 887 F.2d 502, 504 (4th Cir. 1989).) The court finds this argument unavailing. The memorandum opinion quoted the very passage from *Parcoil Corp.* that Thompson claims the court failed to apply. (*Compare id.* ¶ 35 (quoting *Parcoil Corp.*, 887 F.2d at 504), *with* Mem. Op. at 21 (quoting *Parcoil Corp.*, 887 F.2d at 504).) And while Thompson says the court should have made a "context"-dependent inquiry under *Parcoil Corp.*, (Pl.'s Br. ¶ 39), the court did just that. Quoting *Parcoil Corp.*, the court noted that a RICO pattern's existence is "to be decided on a case-by-case basis" after examining the "variety of predicate acts . . ., the number of putative victims, the presence of separate schemes, and the potential for multiple distinct injuries." (Mem. Op at 21 (quoting *Parcoil Corp.*, 887 F.2d at 504.)) The court then spent three pages applying these factors to Thompson's allegations. (*Id.* at 21–23.) At bottom, Thompson seems to merely disagree with this court's application of *Parcoil Corp.* (Pl.'s Br. ¶ 39 (protesting that the court found Thompson's allegations "insufficient to pass the initial stage for a RICO complaint").) While Thompson may disagree with the court's ruling, "mere disagreement does not support a Rule 59(e) motion." *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993).

Second, Thompson argues that the court mistakenly held that the RICO Defendants did not act as a "continuing unit" based on "periods of inactivity between alleged predicate

acts" and certain isolated actions by defendants. (Pl.'s Br. ¶ 41 (citing Mem. Op. at 18)).

Thompson points to passages from *Boyle v. United States* that, according to her, show the court

committed error in so holding. (*Id.* ¶ 42 (quoting 556 U.S. 938, 948 (2009)).) But in the

portion of the memorandum opinion that Thompson challenges, the court merely noted that

the alleged enterprise's lack of "collaborat[ion] over a long-enough period" suggested the

alleged enterprise lacked a "*common purpose*," a requirement for finding a RICO association-in-

fact. (Mem. Op. at 18 (emphasis added).) The court did not suggest that periods of inactivity

alone disqualify an organization from being a RICO enterprise. And more importantly, the

court expressly declined to resolve whether the RICO Defendants functioned as a continuing

unit or enterprise at all. (Mem. Op. at 19 ("Ultimately, the court need not resolve whether Ms.

Thompson has pled enough facts to satisfy the enterprise element for certain RICO

Defendants. Even assuming that she has, her § 1962(c) claim would fail . . . .").) All else aside,

then, the court cannot reconsider a holding that it never made.

Third, Thompson argues that the "court does not appear to have taken into

consideration the remedial nature of the RICO statute" in finding a lack of closed-ended

continuity. (Pl.'s Br. ¶¶ 48–50.) For this proposition, Thompson quotes language from *Boyle*

*v. United States* that RICO should be "liberally construed to effectuate its remedial purposes."

(*Id.* ¶ 48 (quoting 556 U.S. at 944).) What Thompson argues here is not entirely clear, but she

seems to say that *Boyle* weighed in favor of a finding of closed-ended continuity.

But *Boyle*'s quoted language above was rejecting a narrow reading of the term

"association-in-fact"; it had nothing to do with closed-ended continuity. *Boyle*, 556 U.S. at 944.

Indeed, *Boyle*—a case that was solely about what constitutes a RICO "enterprise"—did not address closed-ended continuity at all. *Id.* at 945. A stray line from *Boyle* did not disturb the Fourth Circuit's (and the U.S. Supreme Court's) well-developed continuity doctrine, which the court applied in this case. *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 318 (4th Cir. 2010) (to show "a *pattern* of [racketeering] activity, the plaintiff must show 'continuity plus relationship,' *i.e.*, 'that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity'" (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)) (emphases in original)). At the very least, the court's application of the Fourth Circuit's closed-ended continuity standard was no "clear error of law."

For these reasons, the court finds that Thompson did not point to any "clear error of law" requiring reconsideration.

### IV.    Conclusion

While Thompson may disagree with the court's decision, disagreement alone cannot carry a motion for reconsideration under Rule 59(e). For the reasons articulated in this memorandum opinion, the court will **DENY** her motion. (Dkt. 71.)

Counts 1 and 2 of Thompson's amended complaint will remain dismissed without prejudice. The court will once again **GRANT** Thompson leave to file a second amended complaint within twenty-one days of the court's forthcoming Order. If Thompson does not file a second amended complaint within twenty-one days, the court will dismiss this action with prejudice.

An appropriate Order will issue.

**ENTERED** this 26th day of May, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE